FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 03, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

MARIE H.,

                    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

NO:  1:18-CV-3092-FVS

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT AND DENYING
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 12 and 13.  This matter was submitted for consideration without oral argument.  The plaintiff is represented by Attorney D. James Tree.  The defendant is represented by Special Assistant United States Attorney Ryan Ta Lu.  The Court has reviewed the administrative record, the parties' completed briefing, and is fully informed.  For the reasons discussed below, the Court **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 13, and **DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 12.

# JURISDICTION

Plaintiff Marie H.[1] protectively filed for supplemental security income on August 19, 2014, alleging an onset date of January 1, 2014. Tr. 186-91. Benefits were denied initially, Tr. 114-17, and upon reconsideration, Tr. 122-24. Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on February 2, 2017. Tr. 49-95. Plaintiff was represented by counsel and testified at the hearing. *Id*. The ALJ denied benefits, Tr. 27-46, and the Appeals Council denied review. Tr. 1. The matter is now before this court pursuant to 42 U.S.C. § 1383(c)(3).

# BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 31 years old at the time of the hearing. Tr. 51. The last year of school she completed was eighth grade. Tr. 51. Plaintiff testified she has a child who does not live with her, and she receives "back child support payments" from her ex-husband. Tr. 56-57. She lives in an apartment by herself, and was homeless "several times" during the adjudicatory period. Tr. 69, 77. She also has one child

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

who lives with his dad, and one child who lives with her mother.  Tr. 78-79.

Plaintiff has worked as a factory laborer, cashier, marker, home attendant, and

cafeteria attendant.  Tr. 59-62, 89.  She testified that she cannot perform her past

work because she "lose[s], like, blocks of eight hours or more at a time that [she]

can't remember"; and she has "a really hard time coping and handling any amount of

stress or tension at all."  Tr. 65-68.

Plaintiff testified that she has problems with anger, loses blocks of time due to

her dissociative disorder, and has severe depression that makes her extremely

emotional.  Tr. 66, 87.  She testified that she does not leave her apartment because

she doesn't trust people.  Tr. 69-70.  She manages her stress by listening to music,

sewing, crocheting, doing word searches, and doing jigsaw puzzles.  Tr. 77, 82.

Plaintiff testified that she went back in mental health treatment the day before the

hearing, but is not planning on going to drug treatment because the mental health

treatment "helps with that."  Tr. 71, 73-74.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported by

substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158

(9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable

mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and

citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42

U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated

impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis

concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since August 19, 2014, the application date.  Tr. 32.  At step two, the ALJ found Plaintiff has the following severe impairments: sprains/strains of the left hip and shoulder, migraines, affective disorder, and anxiety disorders.  Tr. 32.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 33.  The ALJ then found that Plaintiff has the RFC

> to perform medium work as defined in 20 CFR 416.967(c) except avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc.  The claimant may be off task about 10% over the course of an eight-hour workday.  Capable of simple routine work tasks consistent with unskilled work with customary breaks and lunch.  There can be frequent contact with co-workers, but collaborative work efforts should be no more than ten minutes per occurrence and only a few times during the workday.  No contact with the general public, but incidental contact with the public is not precluded.  There should be an emphasis on occupations/duties dealing with things/objects rather than people.

Occasional material changes to the work-setting environment with at least one day's notice.

Tr. 35. At step four, the ALJ found that Plaintiff cannot perform any of her past relevant work. Tr. 40. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: kitchen helper, laundry worker II, and industrial cleaner. Tr. 41. On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since August 19, 2014, the date the application was filed. Tr. 42.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 12. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly considered Plaintiff's symptom claims;

2. Whether the ALJ properly weighed the medical opinion evidence; and

3. Whether the ALJ erred at step three.

## DISCUSSION

### A. Plaintiff's Symptom Claims

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 8

*Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these

symptoms are not entirely consistent with the medical evidence and other evidence in the record" for several reasons.  Tr. 36.

### 1.  Lack of Objective Medical Evidence

First, the ALJ found that "medical evidence of record establishes that [Plaintiff] has significant functional limitations, thus, supporting the testimony to some degree.  But, the treatment record fails to establish more restricted functioning than outlined in the [RFC]."  Tr. 37.  An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence.  *Rollins*, 261 F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601.  However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).

Here, the ALJ set out the medical evidence contradicting Plaintiff's claims of disabling physical limitations, including: normal imaging of Plaintiff's hip and shoulder following three separate bike accidents during the relevant adjudicatory period; largely normal examination findings of good range of motion and normal gait; lack of evidence that Plaintiff engaged in physical therapy "despite numerous referrals"; and sporadic complaints of migraine headaches that presumably resolved with prescribed mediation, and were not mentioned at the hearing.  Tr. 37-38 (citing Tr. 391-93, 396, 398, 400, 407, 410-13, 492-94, 507-08, 538, 550, 557, 579, 642, 718-19).  Plaintiff does not challenge this finding in her opening brief; therefore, the

Court may decline to consider this issue.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).  Regardless, the Court finds the ALJ reasonably relied on this evidence to find that "[t]he sporadic treatment course, as well as benign exams and normal imaging findings, indicate that [Plaintiff's] various pain complaints do not restrict her functioning more than [the assessed RFC]."  Tr. 37; *see Thomas*, 278 F.3d at 958-59 ("If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination . . .  [t]he ALJ may consider testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which the claimant complains.").

Similarly, the ALJ outlined medical evidence inconsistent with Plaintiff's allegations of disabling mental health limitations, including: attention span and concentration "were persistently noted to be normal"; mental status examinations were consistently normal; her depression was "characterized as 'mild' on several occasions"; and despite "definitive evidence of reduced functioning while using substances," Plaintiff's memory appeared intact and she was able to complete her homework while involved in treatment.  Tr. 38 (citing, e.g., Tr. 392, 438, 443, 446, 453, 533, 551, 558).  The ALJ also noted that Plaintiff's history of mental health treatment has been "sporadic", and the record indicates that her "re-engage[ment]" with treatment in March 2015 and February 2016 appeared to be required by CPS, before she was discharged from treatment in both instances due to "excessive no

shows and cancellations." Tr. 38 (citing Tr. 433, 578, 586, 603, 605, 654, 745); *See*

*Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (minimal objective evidence is

a factor which may be relied upon in discrediting a claimant's testimony, although it

may not be the only factor).

In addition, the ALJ found Plaintiff's "purported inability to get along with

others is inconsistent with the treatment record, as evidenced by her variety of

relationships, participation in group therapy, [and] appropriate interactions with

clinicians." Tr. 34, 39, 438, 440, 446, 453, 457-58, 460. 463, 646, 650, 656, 662.

Plaintiff argues that Plaintiff's "instable and abusive 'romantic relationships' and her

ability to interact appropriately during her brief appointments in a structured

treatment environment do not indicate an ability to engage appropriately with others

in a workplace setting on a regular and continuous basis." ECF No. 12 at 18.

However, in the context of evaluating Plaintiff's subjective claims that she is unable

to be around other people and has issues with anger, it was reasonable for the ALJ to

note that these claims are inconsistent with the treatment record, which indicates that

Plaintiff interacted appropriately with clinicians and other participants in group

therapy.

Finally, the ALJ found Plaintiff's allegations that she "often loses track of

time" was "unpersuasive" because "[a]t the hearing, she allege[d] that such

'dissociative' episodes last weeks at a time, but she has never appeared to any

clinician in such a state definitively for any amount of time," nor did it "appear that

her clinicians have undertaken any medical exploration with regard to this complaint." Tr. 38. As an initial matter, the Court agrees that the ALJ mischaracterized Plaintiff's testimony regarding her dissociative episodes as lasting for "weeks at a time," as opposed to her actual testimony that she "lose[s], like blocks of eight hours or more at a time that [she] can't remember." ECF No. 12 at 18-19 (citing Tr. 38, 65). However, while Plaintiff's treatment provider noted that she "investigated what [Plaintiff] experiences when she loses time in a day" at this single appointment, it was nevertheless reasonable for the ALJ to note that, on the whole, Plaintiff's clinicians have not appeared to undertake any sustained "medical exploration with regard to this complaint." Tr. 38. Moreover, as discussed below, Plaintiff fails to challenge the ALJ's finding at step two that her alleged "dissociative state" was not a medically determinable impairment. *See* SSR 96-8p, 1996 WL 374184 at *2 (July 2, 1996) (ALJ must consider only Plaintiff's limitations that are "attributable to medically determinable impairments" in assessing the RFC). Thus, despite the ALJ's mischaracterization of Plaintiff's testimony regarding the length of her dissociative states, it was reasonable for the ALJ to find Plaintiff's allegations of "losing track of time" were "unpersuasive" in light of the lack of objective medical evidence.

        For all of these reasons, and regardless of evidence that could be interpreted more favorably to Plaintiff, the Court finds the ALJ properly relied on evidence from the overall record, as cited extensively above, to support the finding that Plaintiff's

alleged physical and mental health limitations, were inconsistent with minimal

physical and psychiatric treatment records. Tr. 36-39. "[W]here evidence is

susceptible to more than one rational interpretation, it is the [Commissioner's]

conclusion that must be upheld." *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.

2005). The lack of corroboration of Plaintiff's claimed limitations by the medical

evidence was a clear and convincing reason, supported by substantial evidence, for

the ALJ to discount Plaintiff's symptom claims.

### 2. *Failure to Seek and Comply with Treatment*

Second, the ALJ found "there seems to be a pattern of engaging in mental

health treatment when required or in preparation for her disability hearing, but only

attending for a short time before excessively cancelling or simply not showing.

While compliance with treatment may not have been curative, this pattern

undermines the alleged extent of her mental symptoms and limitations." Tr. 38.

Unexplained, or inadequately explained, failure to seek treatment or follow a

prescribed course of treatment may be the basis for an adverse credibility finding

unless there is a showing of a good reason for the failure. *Orn v. Astrue*, 495 F.3d

625, 638 (9th Cir. 2007). In support of this finding, the ALJ cites evidence of

Plaintiff's "sporadic" mental health treatment during the adjudicatory period. Tr. 38.

Specifically, Plaintiff engaged in mental health services in March 2015 and February

2016; however, on both occasions, as noted by the ALJ, evidence suggests (1)

Plaintiff engaged in treatment because it was required by CPS, and (2) Plaintiff was

discharged for excessive no shows and cancellations.  Tr. 38 (citing Tr. 433, 578, 586, 603, 605, 654, 745).  Plaintiff restarted mental health treatment again February 1, 2017, the day before her disability hearing.  Tr. 38, 51, 745.

Plaintiff argues the ALJ improperly "disregarded the reasons provided by treating therapist [Melissa] Belding for [Plaintiff's] inconsistent engagement in treatment services, including homelessness, periods of dissociation, and lack of a phone for communication – reasons that are reflected elsewhere in the record."  ECF No. 12 at 19 (citing Tr. 48, 434-36, 601).  An ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."  Social Security Ruling ("SSR") 16-3p at *8-*9 (March 16, 2016), *available at* 2016 WL 1119029.  However, the ALJ specifically considered, and discounted, the reasons listed by Plaintiff for non-compliance with treatment, including: losing her phone, her phone being stolen, homelessness, and her dissociative allegations.  Tr. 39.  The ALJ found these explanations were inconsistent with evidence that Plaintiff often missed appointments due to her own cancellation; she "was able to re-engage in treatment when instructed by CPS" and in advance of an upcoming disability hearing; and there was no indication in the record that her phone was stolen.  Tr. 39, 433, 578, 603, 654.

Finally, Plaintiff contends that "because the record explicitly indicates that [Plaintiff] had difficulty sustaining mental health services due to her symptoms and resulting homelessness, the ALJ erroneously attributed her engagement in treatment to ulterior motives." ECF No. 12 at 20. Where the evidence suggests lack of mental health treatment is part of a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment as evidence of a lack of credibility. *See Nguyen*, 100 F.3d at 1465. However, aside from the single discharge note that Plaintiff was "experiencing significant time loss due to dissociation" and several reports of homelessness, both addressed above, there is no evidence suggesting Plaintiff's failure to seek treatment is attributable to a mental impairment rather than personal preference or life circumstances. *See, e.g.*, *Molina*, 674 F.3d at 1113-14 (affirming an ALJ's rejection of claimant's testimony based on a resistance to treatment, where there was no evidence that the resistance was based on her impairments rather than her personal preference). For all of these reasons, it was reasonable for the ALJ to conclude that the level or frequency of Plaintiff's treatment was inconsistent with the alleged severity of complaints. *See Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld). This was a clear and convincing reason for the ALJ to discredit Plaintiff's symptom claims.

/ / /

/ / /

### 3. Inconsistencies

Third, the ALJ found "inconsistencies in [Plaintiff's] reports that raise issues about her reliability." Tr. 39. In support of this finding, the ALJ noted that Plaintiff "alleged that her children were not removed from her care by Children Protective Services (CPS), but it is clear from the record that this agency has been involved"; and while Plaintiff testified that it was not possible to do both dialectical behavior therapy (DBT) and a substance abuse program (MICA) at the same time, "clinical notes indicate that this was [Plaintiff's] election." Tr. 38-39 (citing Tr. 64, 72, 80-81, 456, 457, 459). The Court may decline to address this issue because it was not raised with specificity in Plaintiff's opening brief. *Carmickle*, 533 F.3d at 1161 n.2. Moreover, in evaluating the severity of Plaintiff's symptoms, the ALJ properly considered inconsistencies in Plaintiff's statements, and between her testimony and her conduct. *See Thomas*, 278 F.3d at 958-59; *Tommasetti*, 533 F.3d at 1039 (prior inconsistent statements may be considered).

The Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.

## B. Medical Opinions

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v.*

*Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester,* 81 F.3d at 830–831). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray,* 554 F.3d at 1228 (quotation and citation omitted).

The opinion of an acceptable medical source such as a physician or psychologist is generally given more weight than that of an "other source." *See* SSR 06-03p (Aug. 9, 2006), *available at* 2006 WL 2329939 at *2; 20 C.F.R. § 416.927(a). "Other sources" include nurse practitioners, physician assistants, therapists, teachers, social workers, and other non-medical sources. 20 C.F.R. §§

404.1513(d), 416.913(d).[2]  The ALJ need only provide "germane reasons" for disregarding an "other source" opinion.  *Molina*, 674 F.3d at 1111.  However, the ALJ is required to "consider observations by nonmedical sources as to how an impairment affects a claimant's ability to work."  *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987).

Plaintiff argues the ALJ erroneously considered the opinion of treating mental health therapist Melissa Belding, LMHC.  ECF No. 12 at 11-17.  In May 2016, Ms. Belding completed a "documentation request form for medical or disability condition" form, and opined that Plaintiff would be limited to working 1-10 hours per week due to "significant dissociation daily losing anywhere from a few minutes to hours at a time," and anger outbursts.  Tr. 420.  Ms. Belding opined that Plaintiff's "emotion dysregulation in general is not within functional range for a working environment."  Tr. 420.  The ALJ gave her opinion minimal weight because it was not consistent with the overall treatment record.  Tr. 40.

The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating that medical opinion.  *Orn*, 495 F.3d at 631; *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (an ALJ may

---

[2] Social Security regulations regarding the evaluation of opinion evidence were amended effective March 27, 2017.  However, the Court applies the law in effect at the time of the ALJ's decision on March 22, 2017.

discount an opinion that is conclusory, brief, and unsupported by the record as a whole, or by objective medical findings). Here, the ALJ specifically found that the treatment record was not consistent with Ms. Belding's opinion that Plaintiff was limited in her ability to work due to "anger outbursts" and "emotional dysregulation." Tr. 40, 420. In support of this finding, the ALJ referenced portions of his decision that cited Plaintiff's consistently normal mental status examination results, including normal attention span, concentration, and intact memory; depression characterized as "mild"; completion of homework while enrolled in treatment; appropriate interactions with her clinicians; and participation in group therapy. *See* Tr. 34, 38, 40, 392, 438, 440, 443, 446, 453, 457-58, 460. 463, 533, 551, 558, 646, 650, 656, 662.

Plaintiff argues the ALJ did not support this finding with requisite specificity; she cites evidence in the record that she "experiences uncontrollable anger outbursts as a result of her PTSD," and has "frequent and severe emotional dysregulation resulting from [her] mental health impairments." ECF No. 12 at 14-15. However, as noted by Defendant, the evidence cited by Plaintiff to support her argument is largely comprised of her own subjective complaints, which were properly discounted by the ALJ; whereas the overall record, including objective mental status examinations from the same treatment records cited by Plaintiff, is largely comprised of normal findings. ECF No. 13 at 14; ECF No. 12 at 14-15 (citing Tr. 434-36, 440-43, 450, 457, 459-60, 573-75, 646, 650-51, 656-57, 669); *see* 20 C.F.R.

§ 416.929(a) (claimant's subjective statements about symptoms will not alone establish Plaintiff is disabled). Moreover, as discussed above, it was reasonable for the ALJ to note that Plaintiff's cooperative interactions with clinicians, including Ms. Belding, and appropriate participation in group therapy, were inconsistent with Ms. Belding's assessment that Plaintiff's "anger outbursts" would preclude interaction with others. Tr. 34, 40. The lack of consistency between Ms. Belding's opinion and the overall record was a germane reason for the ALJ to reject Ms. Belding's opinion.

Second, the ALJ noted that he "did not find a medically determinable basis for the purported 'dissociative episodes' and Ms. Belding is not an acceptable medical source." Tr.40. Plaintiff is correct that the ALJ may not "simply disregard" an "other source" observation because it is not from an "acceptable medical source." *See* SSR 06-03p at *5 ("depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source.'"). However, the ALJ must consider only Plaintiff's limitations and restrictions that are "attributable to medically determinable impairments" in assessing the RFC. SSR 96-8p, 1996 WL 374184 at *2 (July 2, 1996). Further, the regulations confirm that a symptom is not a medically determinable impairment and "no symptom by itself can establish the existence of such an impairment." SSR 96-4p, 1996 WL 374187, at *1 (July 2, 1996).

Here, at step two, the ALJ analyzed Plaintiff's complaint of dissociative episodes and noted that "no acceptable medical source has included such a diagnosis in the record." Tr. 33. Plaintiff does not challenge this step two finding. *See Carmickle*, 533 F.3d at 1161 n.2. Moreover, the opinion of an acceptable medical source is required to establish the existence of a medically determinable impairment. *See* SSR 06-03p, 2006 WL 2329939 at *2 (August 9, 2006). Thus, because the ALJ properly found that Plaintiff's dissociative episodes were not a medically determinable impairment, it was reasonable for the ALJ to reject the portion of Ms. Belding's opinion based on this unsupported symptom claim. Moreover, the Court notes that despite finding no medically determinable impairment related to Plaintiff's dissociative complaints, the ALJ found "[n]evertheless, the sequential disability analysis is not driven by diagnosis, but rather functioning, [thus] I have considered all of [Plaintiff's] established symptoms and resulting functional limitations – regardless of the diagnostic label attached to them – in assessing [Plaintiff's] maximum [RFC]." Tr. 33.

Finally, the ALJ "note[d] that this opinion was rendered at a time when [Plaintiff] had just returned for treatment and had tested positive for illegal substances, thus, may not be an accurate depiction of [Plaintiff's] functioning throughout the period at issue." Tr. 40. Plaintiff argues that the "record consistently reflects the severity of symptoms and limitations opined to by treating therapist [Ms.] Belding, regardless of whether [Plaintiff] had recently returned to treatment or

engaged in substance use." ECF No. 12 at 16. However, as discussed above, the evidence cited by Plaintiff to support her argument is largely comprised of her own subjective complaints, which were properly discounted by the ALJ. Moreover, the results of objective mental status examinations from the same treatment records cited by Plaintiff are consistently normal, and aside from the treatment records at the time of Ms. Belding's opinion, do not include ongoing evidence of substance use by Plaintiff during the adjudicatory period. See Tr. 443, 450, 457, 478, 573-75, 581, 589, 646, 656-57, 669, 749. Based on the foregoing, the Court finds it was reasonable for the ALJ to note that Plaintiff's presentation simultaneous to testing positive for substance use "may not be an accurate depiction of [Plaintiff's] functioning throughout the period at issue." Tr. 40. Moreover, even assuming the ALJ failed to properly support this reasoning, any error is harmless because, as discussed above, the ALJ's ultimate rejection of Ms. Belding's opinion was supported by substantial evidence. *See Carmickle*, 533 F.3d at 1162-63.

For all of these reasons, the Court finds the ALJ properly considered Ms. Belding's opinion, and offered germane reasons for granting it minimal weight.

**C. Step Three**

At step three, the ALJ must determine if a claimant's impairments meet or equal a listed impairment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The Listing of Impairments "describes for each of the major body systems impairments [which are considered] severe enough to prevent an individual from doing any

gainful activity, regardless of his or her age, education or work experience." 20 C.F.R. §§ 404.1525, 416.925. To meet a listed impairment, a claimant must establish that he meets each characteristic of a listed impairment relevant to her claim. 20 C.F.R. §§ 404.1525(d), 416.925(d). If a claimant meets the listed criteria for disability, he will be found to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The claimant bears the burden of establishing she meets a listing. *Burch*, 400 F.3d at 683.

In determining whether a claimant's mental impairments meet a listing, the ALJ considers (1) whether specified diagnostic criteria ("paragraph A" criteria) are met, and (2) whether specified functional limitations ("paragraph B" criteria) are present. 20 C.F.R. §§ 404.1520a, 416.920a. To meet listing 12.04, depressive, bipolar and related disorders; listing 12.06, anxiety and obsessive-compulsive disorders; or listing 12.05, trauma and stressor related disorders, a claimant who satisfies the paragraph A criteria must also satisfy paragraph B criteria, which includes at least one extreme or two marked limitations in these four areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. 20 C.F.R. § 404, Subpt P, App'x I. "Marked" means more than moderate but less than extreme. *Id.*

Here, the ALJ concluded that the severity of Plaintiff's mental impairments did not meet or medically equal the criteria of Listing 12.04, 12.06, or 12.15. Tr. 33.

Specifically, the ALJ found the paragraph B criteria were not satisfied because Plaintiff had mild limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations with regard to concentrating, persisting, or maintaining pace; and mild limitations in adapting and managing oneself. Tr. 33-34. Plaintiff argues the ALJ erred by failing to find marked limitations in Plaintiff's ability to interact with others; concentrate, persist, or maintain pace; and adapt or manage herself. ECF No. 12 at 4-11.

First, the ALJ found that "[i]n interacting with others, [Plaintiff] had moderate limitations. While [Plaintiff] alleged significant problems with anger and irritability, social interactions demonstrated in the record were not indicative of marked difficulties." Tr. 34. In support of this finding, the ALJ noted that Plaintiff had romantic relationships, relationships with her children, interacted appropriately with clinicians, participated appropriately in group therapy, and expressed a desire to return to work as a caregiver. Tr. 34 (citing Tr. 438, 440, 446, 453, 457-58, 460. 463, 646, 650, 656, 662). As correctly noted by Plaintiff, a claimant's ability to interact with others is defined in the regulations as one's capacity to "relate to and work with supervisors, co-workers, and the public," examples of which include "handling conflicts with others" and "keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness." 20 C.F.R. § 404, Subpt. P, App'x I, 12.00E2. Plaintiff contends that she is more than moderately limited in this area because the record "repeatedly demonstrates" that she "struggles

with" irritability, agitation, angry outbursts, isolation, and difficulty being around people.  ECF No. 12 at 5 (citing Tr. 19, 415, 442-43, 450, 457, 475, 573, 581, 589, 646, 650, 749).  Plaintiff additionally argues that the ALJ disregarded evidence that Plaintiff's romantic relationships that were "characterized by instability and abuse"; that she had "significant difficulty caring for her children"; and that her "ability to function during brief appointments in a controlled treatment environment does not indicate that she can relate to supervisors, co-workers, and the public."  ECF No. 12 at 6-7 (citing Tr. 25, 434-36, 440, 574, 578).

However, regardless of evidence that could be considered more favorable to Plaintiff, including her reports of instability in her interpersonal relationships, the Court finds it was reasonable for the ALJ to rely on treatment records indicating Plaintiff was able to cooperate with others, sustain conversation, and understand social cues in the clinical setting, as evidence of her ability to interact with others. *See* § 404, Subpt. P, App'x I, 12.00E2 (noting examples of "interact with others" include cooperating with others, asking for help when needed, initiating or sustaining conversation, and understanding and responding to social cues); *see also Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld).  Moreover, in support of her argument, Plaintiff relies almost entirely on her own testimony and self-reported limitations.  ECF No. 12 at 6-7.  As discussed in detail above, the ALJ properly discounted Plaintiff's symptom claims.  Accordingly, Plaintiff's reliance on this

evidence does not establish that the ALJ erred in failing to credit that evidence when assessing Plaintiff's ability to interact with others under the "paragraph B" criteria. Moreover, even assuming, *arguendo*, that the ALJ erred in considering this functional area, any error would be harmless because, as discussed below, the ALJ properly found less than marked limitations in the other functional areas; thus, Plaintiff's claimed mental impairments fail to satisfy paragraph B criteria, which requires at least one extreme or two marked limitations in these four areas of mental functioning. *Molina*, 674 F.3d at 1111 (an error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination").

Second, the ALJ found Plaintiff had moderate limitations with regard to concentrating, persisting, or maintaining pace. Tr. 34. In support of this finding, the ALJ cited "consistently normal" mental status examination results, including normal attention span and concentration. Tr. 34 (citing, e.g., Tr. 392, 397, 453). The ALJ additionally noted that Plaintiff was able to complete assigned homework as part of her treatment. Tr. 34, 438, 446. Plaintiff argues this finding "wholly disregarded that [Plaintiff] experiences frequent dissociative states that would certainly interfere with her ability to maintain pace in the workplace," and "[f]urther, the ALJ disregarded the repeated indications in the record of impaired concentration and focus resulting from [Plaintiff's] mental health symptoms." ECF No. 12 at 8-9 (citing Tr. 19, 241, 432, 434, 440, 457, 463, 573, 581, 589, 749). However, Plaintiff again relies largely on her own testimony and self-reported limitations, which were

properly discounted by the ALJ. Moreover, regardless of evidence that might be considered favorable to Plaintiff, it was reasonable for the ALJ to rely on consistently normal objective mental status examination results, "with a normal attention span and concentration," to support the finding that Plaintiff had only moderate limitations in the functional area of concentrating, persisting, or maintaining pace. *See Burch*, 400 F.3d at 679.

Third, the ALJ found Plaintiff had mild limitations in adapting or managing herself. Tr. 34. In support of this finding, the ALJ noted that Plaintiff was able to manage her own self-care independently; able to attend to children and clean house when they were in school "prior to their relocation"; navigate public transportation; schedule medical appointments; and meet emergent needs, including applying for benefits and presenting to the emergency room for acute care. Tr. 34, 573, 679, 745. Plaintiff contends that "[n]one of these activities, . . . are pertinent to this functional category. Rather, an individual's ability to 'adapt or manage oneself' is not determined by her ability to perform daily activities, but by her ability to maintain emotional regulations and control her behavior in a workplace setting." ECF No. 12 at 10 (citing 20 C.F.R. § 404, Subpt. P, App'x I, 12.00(E)(4)). Plaintiff further argues that she has "significant difficulty with emotional dysregulation, evidencing that she would be unable to regulate her emotions and control her behavior in a work setting." ECF No. 12 at 10-11. Finally, Plaintiff cites her self-reports that she was

unable to care for her children "at times" during the adjudicatory period. ECF No. 12 at 10 (citing Tr. 459, 573, 589).

As an initial matter, while Plaintiff correctly notes this area of mental functioning generally refers to the ability to "regulate emotions [and] control behavior" in the work setting, the regulations also reference the ability to "maintain well-being," examples of which include: making plans for yourself independently of others, maintaining personal hygiene and attire, adapting to changes, and being aware of normal hazards and taking appropriate precautions. *See* § 404, Subpt. P, App'x I, 12.00(E)(4). Thus, regardless of evidence that could be considered more favorable to Plaintiff, including her self-reported anger outbursts and hypervigilance in public, the Court finds it was reasonable for the ALJ to rely on evidence that Plaintiff was able to attend to self-care, schedule and attend appointments, navigate public transportation, apply for benefits, and seek acute care when needed, to support his finding that Plaintiff had only mild limitations in adapting and managing herself. *See Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld).

Based on the foregoing, the Court finds the ALJ properly considered the "paragraph B" criteria, and properly concluded, based on substantial evidence, that Plaintiff's claimed mental impairments did not meet or medically equal Listing 12.04, 12.06, or 12.15, during the relevant adjudicatory period.

**CONCLUSION**

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail above, the ALJ provided clear and convincing reasons to discount Plaintiff's symptom claims, properly weighed the medical opinion evidence, and did not err at step three. After review the court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12,** is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.

The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgement shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** July 3, 2019.

_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
United States District Judge